UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA, *ex rel.*
ELIZABETH KOEHLER, THE STATES OF
CALIFORNIA, FLORIDA, MASSACHUSETTS,
and NEW YORK, *ex rel.* ELIZABETH KOEHLER,
and ELIZABETH KOEHLER, *individually*,

                    Plaintiffs,

          v.

UNITED SITE SERVICES, INC.,

                    Defendant.

**MEMORANDUM AND ORDER**

17-CV-07083-LDH-LKE

---

LASHANN DEARCY HALL, United States District Judge:

    Elizabeth Koehler ("Relator") brings this *qui tam* action against United Site Services, Inc.

("Defendant"), individually and on behalf of the United States of America and the States of

California, Florida, Massachusetts, and New York (the "States"), alleging claims under the False

Claims Act ("FCA") and analogous state laws ("State FCA Laws").[1]  Defendant moves, pursuant

to Rules 9(b), 12(b)(2),[2] and 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss

Relator's non-intervened federal FCA and state FCA claims.

---

[1] Pursuant to 31 U.S.C. § 3730(b)(4)(B), the United States declined to intervene as to the counts brought under the FCA.  The States also declined to intervene as to the counts brought pursuant to State FCA Laws.

[2] Although Defendant only expressly moves to dismiss on Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure, Defendant also advances arguments with respect to personal jurisdiction over it in the instant matter.  The Court, therefore, construes Defendant's motion as also brought pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure.

## BACKGROUND[3]

### I.    The Multiple Award Schedule

Defendant leases and services portable restrooms, restroom trailers, shower trailers, roll off trash containers, and temporary fences.  (Corrected Am. Compl. ("Am. Compl.") ¶ 2, ECF No. 42.)  In addition, Defendant provides waste-pumping and temporary electric power services. (*Id.*)  According to the Corrected Amended Complaint (the "Amended Complaint"), Defendant provides its services in all states, the District of Columbia, and United States territories.[4]  (*Id.* ¶ 42; *see also id.* ¶¶ 5-6.)

On August 1, 2007, Defendant entered a Multiple Award Schedule (the "Schedule") with the Government Services Administration (the "GSA"), which acted on behalf of the United States.  (*Id.* ¶ 38.)  Pursuant to the Schedule, Defendant contracted with "Government agencies," to act as a general or prime contractor, to transport, set up, and service portable restrooms, restroom trailers, shower trailers, and hand-washing units in all states, the District of Columbia, and United States territories through 2012.  (*Id.* ¶¶ 39-40, 42, 44; *see also id.* ¶ 49 n. 3 ("Defendant contracted with agencies of the federal government . . . . ").)  In 2012, the United States extended Defendant's contract for an additional five-year period.  (*Id.* ¶ 41.)  Pursuant to Sections 52.222-6 and 52.222-41 of the Schedule, Defendant and any subcontractor were required to comply with the prevailing wage and the "minimum labor standards," as established under the Davis-Bacon Act and the Service Contract Act, respectively.  (*Id.* ¶¶ 30, 35, 45-46.)

---

[3] The following facts are taken from the Corrected Amended Complaint (the "Amended Complaint"), (Corrected Am. Compl. ("Am. Compl."), ECF No. 42), and, unless otherwise indicated, are assumed to be true for the purposes of this memorandum and order

[4] The Amended Complaint contains inconsistent allegations as to the areas that Defendant services.  In one instance, Relator alleges that Defendant provides services in the forty-eight contiguous states and the District of Columbia. (*Id.* ¶¶ 5-6.)  In another, Relator alleges that Defendant provides services in all states, the District of Columbia, and the United States territories.  For the purposes of this memorandum, the Court accepts the latter allegation as true. (*Id.* ¶ 42.)

Moreover, pursuant to the Schedule, wage determinations were to be made by the Department of Labor, representing the prevailing wage that Defendant and any subcontractor were required to pay each classification of workers. (*Id.* ¶¶ 47-48.)

Additionally, while the Amended Complaint fails to identify when, at some point, Defendant contracted with the States of Texas, Florida, Massachusetts, Washington, Colorado, New York, and California to transport, set up, and service portable restrooms, restroom trailers, shower trailers, and hand-washing units. (*Id.* ¶ 49.) According to the Amended Complaint, these contracts contained provisions "similar to those contained within" the contracts that Defendant entered with federal agencies. (*Id.* ¶ 50.)

Defendant's National Government Account Manager, as well as other members of its senior management team, were responsible for negotiating and managing the "[g]overnment contracts"[5] awarded to Defendant. (*Id.* ¶ 53.) Relator was employed by Defendant from November 2011 to June 2016 as the Regional Sales Manager for Defendant's South Central Region, including the States of Texas, Louisianna, Mississippi, and Alabama. (*Id.* ¶ 59.) In that capacity, Relator worked closely and frequently with Defendant's senior management team, to ensure that government contracts were adequately serviced. (*Id.* ¶¶ 54, 59; *see id.* ¶ 55.) In her role, Relator oversaw all revenue generated by United Site Service in the South Central region and resolved complaints lodged by customers, including complaints that Defendant automatically billed them for missed service calls and "lack of service verification." (*Id.* ¶¶ 60, 62.) Relator, however, did not approve government contracts; rather, only members of Defendant's senior management and legal teams were authorized to do so. (*Id.* ¶¶ 56-58.)

---

[5] In certain instances, the Amended Complaint fails to distinguish between contracts entered by Defendant with federal agencies and those entered with the states, referring instead only to "[g]overnment contracts." (*See, e.g., id.* ¶ 52.)

### A. Missed Service Calls

Defendant employed approximately one hundred delivery drivers, whose duties included the pickup and delivery of portable restrooms, restroom trailers, shower trailers, and hand-washing units that Defendant provided to worksites, pursuant to its government contracts. (*Id.* ¶ 64.) Defendant also employed nearly five hundred tanker-truck and pump-truck drivers, whose primary responsibility was to pump, maintain, and service the portable restrooms, restroom trailers, and hand-washing units at each worksite. (*Id.* ¶ 66.) Additionally, Defendant scheduled up to 1,800 services per day, in any given market. (*Id.* ¶ 67.) Prior to servicing the worksites, each pump-truck and tanker-truck driver was assigned a service route via a service sheet, which provided the schedule for the customers being serviced that day. (*See id.* ¶ 79.) Drivers that missed a scheduled service were required to physically mark the missed service on their service sheet and state the reason for the missed service. (*Id.* ¶ 80.) At the end of each day, the drivers submitted their route sheets to a dispatcher, who in turn sent the sheets to Defendant's Field Operations Support (the "FOS") office in California. (*Id.* ¶¶ 82-83.) The FOS office analyzed the drivers' route sheets and, in instances of missed service calls, was responsible for rescheduling services for the following day. (*Id.* ¶¶ 86-87.) Defendant's clients, including "the [g]overnment," were automatically billed for a set number of services per week, as set forth in each client's contract. (*Id.* ¶¶ 70, 77-78.) In cases where the services could not be performed as scheduled, the FOS office was to credit the customer for any unperformed service and manually adjust its bill to reflect this credit. (*Id.* ¶¶ 86, 89, 91.)

According to the Amended Complaint, Defendant's pump-truck and tanker-truck drivers frequently missed scheduled services due to illness, out-of-service trucks, traffic, and an inability to locate units for service. (*Id.* ¶¶ 72, 81.) In addition, in some instances, drivers were recalled

4

by Defendant to avoid overtime work.  (*Id.*)  Additionally, Defendant frequently re-routed drivers from their scheduled routes, sometimes weeks at a time, to service larger events, like Austin City Limits, Mardi Gras, and events at Circuit of Americas.  (*Id.* ¶ 73.)  Relator alleges that, as a result, in some markets, Defendant missed approximately 100 to 150 scheduled services per day, including services on government contracts.  (*Id.* ¶ 75.)  However, the bills presented to Defendant's clients, including the government, were not manually adjusted by the FOS office for these missing services.  (*Id.* ¶ 92.)  According to the Amended Complaint, manual adjustments to bills were time-consuming and, thus, routinely skipped.  (*See id.* ¶¶ 90, 92, 96-97.)  Moreover, Defendant's senior management discouraged the FOS office from making manual adjustments to customers' bills to account for missed services, unless the client complained and provided proof of the missing service.  (*Id.* ¶¶ 93-95, 97, 105.)  Accordingly, since at least 2011, Defendant billed the government at least $30,000 per day for unperformed services.  (*Id.* ¶¶ 7, 61-63, 100-01, 106.)

During her employment, Relator raised concerns regarding Defendant's failure to manually adjust bills for missed service calls.  (*Id.* ¶¶ 103-04.)  After each complaint, senior management directed Relator to disregard the discrepancies because she was not responsible for overseeing government contracts.  (*Id.* ¶ 104.)  Moreover, Defendant's senior management informed Relator that her "bottom line" would be negatively impacted should bills be manually adjusted to credit clients for missed service calls.  (*Id.*)

### B. Prevailing Wage

Defendant subcontracted some of the services that were to be provided under its government contracts.  (*Id.* ¶ 109.)  Relator alleges, upon information and belief, that Defendant entered agreements with approximately 250 subcontractors nationwide, and that approximately

5

ten of these subcontractors operated in the South Central Region.  (*Id.* ¶¶ 59, 110-12.)

According to the Amended Complaint, Defendant did not implement or follow a bidding process

when selecting subcontractors to perform services under government contracts.  (*Id.* ¶ 116.)

Moreover, Defendant did not maintain written contracts with its subcontractors, nor did it inform

subcontractors of the terms regarding drivers' prevailing wages under the Schedule.  (*Id.* ¶¶ 113,

118.)  Relator alleges that, as a result, in some instances, Defendant's subcontractors paid drivers

$4.00 to $5.00 less per hour than the prevailing wage for work performed under the Schedule.

(*Id.* ¶¶ 114-15.)  And, Defendant improperly "pocketed" the monetary difference between the

wages paid to drivers by its subcontractors and the prevailing wages established under the

Schedule.  (*Id.* ¶ 117.)  Relator complained to Defendant's senior management and leadership

teams about the issue of its subcontractor's failure to pay drivers the prevailing wage.  (*Id.*

¶¶ 119, 121, 123, 125-26, 128-32.)  In response to at least one complaint, Defendant instructed

Relator to disregard the issues concerning the payment of the prevailing wage because Relator

did not oversee government contracts.  (*Id.* ¶ 122.)  Defendant took no further action to address

Relator's concerns.  (*Id.* ¶ 127.)

### C.  Specific Instances of Alleged Fraud

Relator alleges, upon information and belief, that Defendant contracted to provide and

service portable toilets at Camp Edwards, located in Massachusetts.  (*Id.* ¶ 134.)  According to

the Amended Complaint, Defendant admitted that the billing for services completed at Camp

Edward was "imprecise."  (*Id.* ¶¶ 134-35.)  Relator further alleges that there are thousands of

route sheets associated with the Camp Edward contract, which, along with invoices, would

indicate missed services, unauthorized services, and a failure to reduce the client's bill to reflect

missed services.  (*Id.* ¶¶ 136-37.)  Additionally, Relator alleges that Defendant had other

contracts with the State of Massachusetts, under which it billed the state for unperformed services. (*Id.* ¶ 138-39, 142.)

Next, Relator alleges improprieties for services billed by Defendant to the United States and individual states impacted by Hurricane Harvey, including Texas and Louisianna. (*Id.* ¶¶ 143-44.) Specifically, under certain of the contracts, Defendant was required to deliver and set up toilets and hand-washing units. (*Id.* ¶¶ 65, 145.) Relator alleges, upon information and belief, that, from October to December 2017, Defendant billed for services that were not performed and continued to bill for these services even after the units had been retrieved. (*Id.* ¶¶ 148-49.) Moreover, according to the Amended Complaint, upon information and belief, Defendant overcharged the United States government and states for the use of its shower trailers. (*Id.* ¶¶ 150-52.) Relator further alleges, upon information and belief, that Defendant similarly overcharged for restrooms, toilets, and hand-washing units provided under a separate contract with the Federal Emergency Management Agency. (*Id.* ¶¶ 153-54.)

## STANDARD OF REVIEW

On a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure, the plaintiff bears the burden of showing that the court has jurisdiction over the defendant. *Grand River Enters. Six Nations, Ltd. v. Pryor*, 425 F.3d 158, 165 (2d Cir. 2005) (quoting *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999)); *In re Magnetic Audiotape Antitrust Litigation*, 334 F.3d 204, 206 (2d Cir. 2003). To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff "need only make a *prima facie* showing of personal jurisdiction over the defendant," and the court will "construe the pleadings and affidavits in the light most favorable to plaintiff[ ], resolving all doubts in their favor." *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir.

7

2010).  "'[A plaintiff's] prima facie showing, necessary to defeat a jurisdiction testing motion, must include an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant.'"  *Id.* (quoting *Metro Life Ins. Co. v. Robinson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996)) (internal brackets omitted).

**DISCUSSION**

### I.     Personal Jurisdiction

Defendant argues that the Amended Complaint should be dismissed, pursuant to:  (1) Rule 9(b) of the Federal Rules of Civil Procedure, for failure to plead with sufficient particularity; (2) Rule 12(b)(2) of the Federal Rules of Civil Procedure, for lack of personal jurisdiction, and (3) Rule 12(b)(6) of the Federal Rules of Civil Procedure, for failure to state a claim.  (Def.'s Mem. L. Supp. Mot. Dismiss ("Def,'s Mem.") at 2-22, ECF No. 48-1.)  Because the question of jurisdiction is gating, the Court necessarily begins its analysis there.  *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998) ("The requirement that jurisdiction be established as a threshold matter 'spring[s] from the nature and limits of the judicial power of the United States' and is 'inflexible and without exception.'" (quoting *Mansfield, C. & L.M.R. Co. v. Swan*, 111 U.S. 379, 382 (1884))).  For a court:

> [t]o exercise personal jurisdiction lawfully, three requirements must be met. []"First, the [relator's] service of process upon the defendant must have been procedurally proper. []Second, there must be a statutory basis for personal jurisdiction that renders such service of process effective . . . . []Third, the exercise of personal jurisdiction must comport with constitutional due process principles."

*Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 327 (2d Cir. 2016) (ellipses in original) (quoting *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59-60 (2d Cir. 2012)).

Here, Defendant does not dispute that service was proper or that there was a statutory basis rendering such service of process effective.  (*See* Def.'s Mem.)  Defendant, instead, argues that

Relator fails to sufficiently allege that the Court has authority to exercise personal jurisdiction over Defendant, consistent with the Constitution.  (Def.'s Mem. at 21-22.)  The Court agrees.

"Pursuant to the due process clauses of the Fifth and Fourteenth Amendments, there are two parts to the due process test for personal jurisdiction . . . : []the 'minimum contacts' inquiry and the 'reasonableness' inquiry."  *Waldman*, 835 F.3d at 331 (first citing *Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*, 326 U.S. 310 (1945); and then citing *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 127 (2d Cir. 2002)).  With respect to the minimum contacts inquiry, a court must "determine whether a defendant has sufficient minimum contacts with the forum to justify the court's exercise of personal jurisdiction over the defendant."  *Id.* (first citing *Daimler AG v. Bauman*, 571 U.S. 117, 126 (2014); then citing *Calder v. Jones*, 465 U.S. 783, 788 (1984); then citing *Int'l Shoe*, 326 U.S. at 316; and then citing *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567–68 (2d Cir. 1996)).  "The assessment of minimum contacts is fact-specific and must necessarily be tailored to the circumstances of each case."  *Metro. Life Ins. Co.*, 84 F.3d at 570.  Central to the minimum contacts inquiry, nonetheless, is the question of whether, in totality, the defendant has "purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws," such that the defendant "should reasonably anticipate being haled into court there."  *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 242 (2d Cir. 2007) (alteration in original) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-75 (1985)); *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 82 (2d Cir. 2018) ("First, courts evaluate the quality and nature of the defendant's contacts with the forum state under a totality of the circumstances test." (citation and internal quotation marks omitted)).

9

The second prong of the due process inquiry—that is, the reasonableness inquiry— asks whether the exercise of personable jurisdiction "is reasonable under the circumstances of the particular case." *Metro. Life Ins. Co.*, 84 F.3d at 568. This inquiry "requires the court to determine whether the assertion of personal jurisdiction over the defendant comports with "'traditional notions of fair play and substantial justice'" under the circumstances of the particular case." *Waldman*, 835 F.3d at 331 (quoting *Daimler*, 571 U.S. at 126). When evaluating reasonableness, a court must assess the following factors: "(1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies." *Metro. Life Ins. Co.*, 84 F.3d at 568 (citing *Asahi Metal Indus. Co. v. Superior Ct. of California, Solano Cnty.*, 480 U.S. 102, 113-14 (1987)).

"[T]he exercise of [personal] jurisdiction is favored where the plaintiff has made a threshold showing of minimum contacts." *Id.* Jurisdiction may, nonetheless, be "defeated where the defendant presents a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Id.* (internal quotation marks omitted) (quoting *Burger King*, 471 U.S. at 477). Consequently, "[i]n assessing whether it may exercise jurisdiction over a particular defendant, a court must weigh the relative strengths and weaknesses of each requirement—that is, depending upon the strength of the defendant's contacts with the forum state, the reasonableness component of the constitutional test may have a greater or lesser effect on the outcome of the due process inquiry." *Id.* However, if a defendant's contacts with the forum "do not exist in sufficient abundance, that is, if the constitutionally necessary first-tier

10

minimum is lacking, the inquiry ends [there]." *Id.* (*Donatelli v. Nat'l Hockey League*, 893 F.2d 459 (1st Cir. 1990)).  Against this backdrop, the Court undertakes the due process inquiry.

### A.  Minimum Contacts

"For purposes of [satisfying the minimal contacts] inquiry," courts distinguish between two kinds of personal jurisdiction:  (1) "'general' jurisdiction" and (2) "'specific' jurisdiction." *Metro. Life Ins. Co.*, 84 F.3d at 567-68 (citation omitted); *see also Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021) (concluding that there are "two kinds of personal jurisdiction: general (sometimes called all-purpose) jurisdiction and specific (sometimes called case-linked) jurisdiction").  A court's general jurisdiction arises when "the defendant's affiliations with the State in which suit is brought 'are so constant and pervasive 'as to render it essentially at home in the forum state.'" *Waldman*, 835 F.3d at 331 (alterations omitted) (quoting *Daimler*, 571 U.S. at 121).   Stated differently, general jurisdiction "is based on the defendant's general business contacts with the forum state and permits a court to exercise its power in a case where the subject matter of the suit is unrelated to those contacts." *Metro. Life Ins. Co.*, 84 F.3d at 567-68 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-16, nn. 8-9 (1984)).  When determining whether it has general jurisdiction, a "court[] impose[s] a more stringent minimum contacts test, requiring the [relator] to demonstrate the defendant's 'continuous and systematic general business contacts.'" *Id.* (quoting *Helicopteros*, 466 U.S. at 416).  It is well settled that where, as here, the defendant is a corporation, "aside from the truly exceptional case, [the defendant] is at home and subject to general jurisdiction only in its place of incorporation or principal place of business." *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 343 (2d Cir. 2018) (quoting *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 629 (2d Cir. 2016)); *see Daimler*, 571 U.S. at 137 ("With respect to a corporation, the place of incorporation and

11

principal place of business are paradig[m] . . . bases for general jurisdiction." (alterations in original)).  In addition, where a plaintiff "has not alleged that [the defendant-corporation] is headquartered or incorporated in [the forum state], nor . . . alleged facts sufficient to show that [the defendant-corporation] is otherwise at home in [the forum state]," a court may not exercise general jurisdiction over the defendant-corporation.  *See Justiniano v. First Student Mgmt. LLC*, No. 16CV02729, 2017 WL 1592564, at *4 (E.D.N.Y. Apr. 26, 2017) (internal quotations and citation omitted); *Id.* ("From *Daimler*, the proposition emerged that it 'would be inconsistent with due process' to exercise general jurisdiction where a plaintiff 'has not alleged that [the defendant] is headquartered or incorporated in New York, nor has it alleged facts sufficient to show that [the defendant] is otherwise "at home" in New York.'" (alterations in original) (emphasis in original) (quoting *Cont'l Indus. Group v. Equate Petrochemical Co.*, 586 Fed.App'x. 768, 769-70 (2d Cir. 2014))).

In the instant matter, Relator concedes that Defendant's principal place of business is Massachusetts.  (Am. Compl. ¶¶ 3, 22.)  Critically, too, Relator fails to allege that Defendant is incorporated in New York.  (*See* Am. Compl..)  Indeed, the Amended Complaint does not include any allegation regarding the state in which Defendant is incorporated.  (*See* Am. Compl.)  Nor has Relator alleged a single fact from which the Court can infer that Defendant is otherwise "at home" in New York.  (*See* Am. Compl.)  It is, therefore, plain to the Court that it cannot exercise general jurisdiction over Defendant.  *See Daimler*, 571 U.S. at 137; *SPV*, 882 F.3d at 343; *Justiniano*, No. 16CV02729, 2017 WL 1592564, at *4.

Nor are the contacts alleged here sufficient to support the exercise of specific jurisdiction over Defendant.  "Specific jurisdiction exists when 'a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum.'"  *Metro.*

*Life Ins. Co.*, 84 F.3d at 567-68 (citation omitted).  That is, a court exercises specific jurisdiction where "the defendant has 'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to" those activities.  *Burger King*, 471 U.S. at 477 (first quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984); and then quoting *Helicopteros*, 466 U.S. at 414).  "The inquiry of whether a forum State may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation."  *Walden v. Fiore*, 571 U.S. 277, 283-84 (2014) (citations and internal quotation marks omitted).  Stated differently, "specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction."  *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (citation and internal quotation marks omitted).  As such, the forum state, as well as the defendant's activities there, must have a "substantial connection" to a relator's claims.  *SPV*, 882 F.3d at 344 ("The defendant's suit-related conduct must create a substantial connection with the forum State." (alteration accepted) (internal quotation marks omitted) (quoting *Walden*, 571 U.S. at 284)).  Notably, with respect to each claim, there must be "suit-related conduct [that] create[s] a substantial connection with the forum State."  *Walden*, 571 U.S. at 284; *see Charles Schwab Corp.*, 883 F.3d at 83-84 ("A [relator] 'must establish the court's jurisdiction with respect to each claim asserted.'" (quoting *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 24 (2d Cir. 2004))).

Here, Relator's federal claims arise under §§ 3729(a)(1)(A), (B), and (C) of the FCA.  To establish a claim under §§ 3729(a)(1)(A) and (B) of the FCA, a relator must show that the defendant: "(1) made a claim, (2) to the United States government, (3) that is false or fraudulent, (4) knowing of its falsity, and (5) seeking payment from the federal treasury."  *Mikes v. Straus*, 274 F.3d 687, 695 (2d Cir. 2001).  Moreover, for a relator to state a claim pursuant to

13

§ 3729(a)(1)(C) of the FCA, she must plead sufficient facts showing that: (1) the defendant conspired with at least two persons for the purpose of getting a false or fraudulent claim allowed or paid by the United States; and (2) at least one of the conspirators performed an act "to effect the object of the conspiracy." *United States ex rel. Piacentile v. Amgen, Inc.*, 336 F. Supp. 3d 119, 136 (E.D.N.Y. 2018) (internal quotation marks omitted) (citing *United States ex rel. Wood v. Allergan, Inc.*, 246 F. Supp. 3d 772 (S.D.N.Y. 2017), *rev'd and remanded on other grounds*, 899 F.3d 163 (2d Cir. 2018)).  The issue, here, as to specific jurisdiction is, therefore, whether Defendant's contacts in connection with its alleged submission of false claims and alleged conspiracy to submit false claims to the United States for payment created a substantial connection with New York.  *See Walden*, 571 U.S. at 284 ("For a [s]tate to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum [s]tate.").  They did not.

Defendant's alleged conduct can be summarized as follows:  (1) Defendant contracted with federal entities to perform pre-scheduled services throughout the forty-eight contiguous states, Washington D.C., and United States territories, (Am. Compl. ¶¶ 39, 42, 77); (2) missed pre-scheduled service calls for clients, including for its "government contracts," (*see id.* ¶¶ 70-72, 75, 81); (3) failed to adjust the amount billed to "the government" to account for these unperformed services, (*id.* ¶¶ 61, 92, 97, 100-01, 106); and (4) entered agreements with subcontractors who, in contravention of the Schedule, failed to pay drivers the proscribed prevailing wage, (*id.* ¶¶ 30-31, 45, 48, 109, 114-15).  Fatally, however, the Amended Complaint fails to include a single allegation connecting the conduct underlying the instant claims to New York, the forum state. (*See* Am. Compl.)  For example, Relator fails to allege that Defendant missed any service call scheduled to occur in New York or failed to adjust bills for any

14

unperformed services that occurred in New York.  (*See id.*)  Likewise, the Amended Complaint fails to allege that any driver who was not paid the prevailing wage was assigned to work in New York.[6]  Indeed, although Relator enumerates specific instances of fraud alleged to have occurred in Massachusetts, Texas, and Louisianna, conspicuously absent is any example of specific fraud committed in New York.  (*See* Am. Compl. ¶¶ 134-54.)  Rather, New York is only included in the Amended Complaint as a place, among other states, where the contracts were performed.  (*See e.g. Id.* ¶¶ 6, 42, 49.)  However, such a "general connection[] with the forum [is] not enough to support the exercise of specific jurisdiction."  *SPV*, 882 F.3d at 344 (internal quotation marks omitted) (quoting *Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*, 582 U.S. 255, 264 (2017)).  As such, Relator plainly fails to provide the Court with a basis on which to exercise specific jurisdiction over Defendant.

Nonetheless, in an effort to convince the Court otherwise, Relator also contends that, under the "effects test," the Court may exercise personal jurisdiction over Defendant.  (Relator's Mem. L. Supp. Opp'n Mot. Dismiss ("Relator's Mem.") at 10-11, ECF No. 48-2.)  Not so.  In this Circuit, "where . . . the conduct that forms the basis for the controversy occurs entirely out-of-forum, and the only relevant jurisdictional contacts with the forum are therefore in-forum

---

[6] In her opposition, Relator newly alleges, in conclusory fashion, that Defendant "committed fraudulent acts within th[e Eastern District of New York]" by "knowingly submitting false claims to the government entities operating in th[e Eastern District of New York]."  (Relator's Mem. L. Supp. Opp'n Mot. Dismiss ("Relator's Mem.") at 10, ECF No. 48-2.)  Even assuming that this allegation was not conclusory, "a party may not assert new facts or legal theories for the first time in opposition papers, as a party may not use motion papers to amend the allegations in its complaint."  *United States v. Westchester Fire Ins. Co.*, No. 22 CV 15, 2025 WL 2916630, at *6 (S.D.N.Y. Oct. 10, 2025) (citing *Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998); *see also Shah v. Helen Hayes Hosp.*, 252 F. App'x 364, 366 (2d Cir. 2007) ("A party may not use his or her opposition to a dispositive motion as a means to amend the complaint.").  As such, the Court disregards these new allegations.  *See United States ex rel. Foreman v. AECOM*, 19 F.4th 85, 107 (2d Cir. 2021) ("A district court . . . 'errs when it consider[s] . . . or relies on factual allegations contained in legal briefs or memoranda in ruling on a 12(b)(6) motion to dismiss.'" (quoting *Friedl v. City of New York*, 210 F.3d 79, 83-84 (2d Cir. 2000))).  For similar reasons, the Court disregards the allegations that "Defendant maintains business operations within New York and has derived substantial revenue from government contracts executed within this jurisdiction," which also appear for the first time in Relator's opposition brief.  *See Westchester Fire Ins. Co.*, No. 22 CV 15, 2025 WL 2916630, at *6; *United States ex rel. Foreman*, 19 F.4th at 107.

effects harmful to the [relator]," a court is to employ an "effects test." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 173 (2d Cir. 2013). Under this test, "the exercise of personal jurisdiction may be constitutionally permissible if the defendant expressly aimed its [out-of-forum] conduct at the forum." *Id.* Harmful effects, alone, however, are insufficient to establish jurisdiction: "[T]he fact that harm in the forum is foreseeable . . . is insufficient for the purpose of establishing specific personal jurisdiction over a defendant." *In re Platinum & Palladium Antitrust Litig.*, No. 1:14-CV-9391-GHW, 2017 WL 1169626, at *42 (S.D.N.Y. Mar. 28, 2017) (quoting *Waldman*, 835 F.3d at 339 (quoting *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 674 (2d Cir. 2013))), *on reconsideration*, 449 F. Supp. 3d 290 (S.D.N.Y. 2020), *aff'd in part*, *vacated in part on other grounds*, *rev'd in part on other grounds*, 61 F.4th 242 (2d Cir. 2023))).

As an initial matter, in her opposition, Relator advances conflicting arguments concerning the appropriateness of the effects test. Specifically, despite arguing for the application of the effects test, which is typically invoked "where . . . the conduct that forms the basis for the controversy occurs *entirely out-of-forum*," *Licci*, 732 F.3d at 173 (emphasis added), Relator also contends that, because Defendant "committed fraudulent acts *within* this [forum]," the Court may exercise personal jurisdiction. (Relator's Mem. at 10 (emphasis added).) However, critically, Relator fails to allege a single fact from which the Court could plausibly infer that Defendant engaged in out-of-forum activity directed at New York or that any such out-of-state activity caused Relator harm in New York. As such, even under the effects test, the Court lacks personal jurisdiction over Defendant. *See Licci*, 732 F.3d at 173; *In re Platinum & Palladium Antitrust Litig.*, No. 1:14-CV-9391-GHW, 2017 WL 1169626, at *42. The Courts inquiry, therefore, ends here. *See Metro. Life Ins. Co.*, 84 F.3d at 568 ("If the [defendant's

16

contacts] do not exist in sufficient abundance, that is, if the constitutionally necessary first-tier minimum is lacking, the inquiry ends." (citation and internal quotation marks omitted)).[7]

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is GRANTED, and Relator's Amended Complaint is DISMISSED.

SO ORDERED.

Dated: Brooklyn, New York
       March 30, 2026

/s/ LDH

LASHANN DEARCY HALL
United States District Judge

---

[7] Having dismissed the federal claims in this action, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims. *See Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("[A] district court 'may decline to exercise supplemental jurisdiction' if it 'has dismissed all claims over which it has original jurisdiction.'" (quoting 28 U.S.C.A. § 1367(c)(3))).