UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* ELIZABETH KOEHLER, THE STATES OF CALIFORNIA, FLORIDA, MASSACHUSETTS, and NEW YORK, *ex rel.* ELIZABETH KOEHLER, and ELIZABETH KOEHLER, *individually*,<br><br>Plaintiffs,<br>v.<br><br>UNITED SITE SERVICES, INC.,<br><br>Defendant. | **MEMORANDUM AND ORDER**<br><br>17-CV-07083 (LDH) (LKE) |

LASHANN DEARCY HALL, United States District Judge:

Elizabeth Koehler ("Relator") brings this *qui tam* action against United Site Services, Inc. ("Defendant"), individually and on behalf of the United States of America and the States of California, Florida, Massachusetts, and New York (the "States"), alleging claims under the False Claims Act ("FCA"), 31 U.S.C. § 3729, *et seq.*, and analogous state laws ("State FCA Laws").[1] Defendant moves, pursuant to Rules 12(b)(6) and (9) of the Federal Rules of Civil Procedure, to dismiss Relator's non-intervened Federal FCA and State FCA Counts.

## BACKGROUND[2]

Defendant leases and services portable restrooms, restroom trailers, shower trailers, roll off trash containers, and temporary fences. (Corrected Am. Compl. ("Amended Complaint" or "CAC") ¶ 2, ECF No. 42.) In addition, Defendant provides waste-pumping and temporary

[1] Pursuant to 31 U.S.C. § 3730(b)(4)(B), the United States declined to intervene as to the counts brought under the FCA (the "Federal FCA Counts"). The States also declined to intervene as to the counts brought pursuant to State FCA Laws (the "State FCA Counts").

[2] The following facts are taken from Relator's Corrected Amended Complaint ("CAC"), (Corrected Am. Compl., ECF No. 42), and, unless otherwise indicated, are assumed to be true for the purposes of this memorandum and order

electric power services. (*Id.*) According to the CAC, Defendant provides its services in all states, the District of Columbia, and United States territories.[3] (*Id.* ¶ 42; *see also id.* ¶¶ 5-6.)

On August 1, 2007, Defendant entered a Multiple Award Schedule (the "Schedule") with the Government Services Administration (the "GSA"), which acted on behalf of the United States. (*Id.* ¶ 38.) Pursuant to the Schedule, Defendant contracted with "Government agencies," to act as a general or prime contractor, to transport, set up, and service portable restrooms, restroom trailers, shower trailers, and hand-washing units in all states, the District of Columbia, and United States territories through 2012. (*Id.* ¶¶ 39-40, 42, 44.) In 2012, the United States extended Defendant's contract for an additional five-year period. (*Id.* ¶ 41.) Pursuant to Sections 52.222-6 and 52.222-41 of the Schedule, Defendant and any subcontractor were required to comply with the prevailing wage and the "minimum labor standards," as established under the Davis-Bacon Act and the Service Contract Act, respectively. (*Id.* ¶¶ 31, 35-36, 45-46.) Moreover, pursuant to the Schedule, wage determinations were to be made by the Department of Labor, consistent with the prevailing wage that Defendant and any subcontractor were required to pay each classification of workers. (*Id.* ¶¶ 47-48.)

Additionally, although the CAC fails to identify when, at some point, Defendant contracted with the States of Texas, Florida, Massachusetts, Washington, Colorado, New York, and California to transport, set up, and service portable restrooms, restroom trailers, shower trailers, and hand-washing units. (*Id.* ¶ 49.) According to the CAC, these contracts contained provisions "similar to those contained within" the contracts that Defendant entered with federal agencies. (*Id.* ¶ 50.)

---

[3] The CAC contains inconsistent allegations as to the areas that Defendant services. In one instance, Relator alleges that Defendant provides services in the forty-eight contiguous states and the District of Columbia. (*Id.* ¶¶ 5-6.) In another, Relator alleges that Defendant provides services in all states, the District of Columbia, and the United States territories. For the purposes of this memorandum, the Court accepts the latter allegation as true. (*Id.* ¶ 42.)

Defendant's National Government Account Manager, as well as other members of its senior management team, were responsible for negotiating and managing the "[g]overnment contracts"[4] awarded to Defendant. (*Id.* ¶ 53.) Relator was employed by Defendant from November 2011 to June 2016 as the Regional Sales Manager for Defendant's South Central Region, including the States of Texas, Louisianna, Mississippi, and Alabama. (*Id.* ¶ 59.) In that capacity, Relator worked closely and frequently with Defendant's senior management team, to ensure that government contracts were adequately serviced. (*Id.* ¶¶ 54-55.) In her role, Relator oversaw all revenue generated by United Site Service's South Central region and resolved complaints lodged by customers, including complaints that Defendant automatically billed them for missed service calls and "lack of service verification." (*Id.* ¶¶ 60, 62.) Relator, however, did not approve government contracts; rather, only members of Defendant's senior management and legal teams were authorized to do so. (*Id.* ¶¶ 56-58.)

**A. Missed Service Calls**

Defendant employed approximately one hundred delivery drivers, whose duties included the pickup and delivery of portable restrooms, restroom trailers, shower trailers, and hand-washing units that Defendant provided to worksites, pursuant to its government contracts. (*Id.* ¶ 64.) Defendant also employed nearly five hundred tanker-truck and pump-truck drivers, whose primary responsibility was to pump, maintain, and service the portable restrooms, restroom trailers, and hand-washing units at each worksite. (*Id.* ¶¶ 65-66.) Additionally, Defendant scheduled up to 1,800 services per day, in any given market. (*Id.* ¶ 67.) Prior to servicing the worksites, each pump-truck and tanker-truck driver was assigned a service route via a service sheet, which provided the schedule for the customers being serviced that day. (*See id.* ¶ 79.)

---

[4] In certain instances, the CAC fails to distinguish between contracts entered by Defendant with federal agencies and those entered with the states, referring instead only to "[g]overnment contracts." (*See, e.g.*, *id.* ¶ 52.)

Drivers that missed a scheduled service were required to physically mark the missed service on their service sheet and state the reason for the missed service. (*Id.* ¶ 80.) At the end of each day, the drivers submitted their route sheets to a dispatcher, who, in turn, sent the sheets to Defendant's Field Operations Support (the "FOS") office in California. (*Id.* ¶¶ 82-83.) The FOS office analyzed the drivers' route sheets and, in instances of missed service calls, was responsible for rescheduling services for the following day. (*Id.* ¶¶ 86-87.) Defendant's clients, including "the [g]overnment," were automatically billed for a set number of services per week, as set forth in each client's contract. (*Id.* ¶¶ 70, 77-78.) In cases where the services could not be performed as scheduled, the FOS office was to credit the customer for any unperformed service and manually adjust its bill to reflect this credit. (*Id.* ¶¶ 86, 89, 91.)

According to the CAC, Defendant's pump-truck and tanker-truck drivers frequently missed scheduled services due to illness, out-of-service trucks, traffic, and an inability to locate units for service. (*Id.* ¶¶ 72, 81.) In addition, in some instances, drivers were recalled by Defendant to avoid overtime work. (*Id.* ¶ 81.) Additionally, Defendant frequently re-routed drivers from their scheduled routes, sometimes weeks at a time, to service larger events, like Austin City Limits, Mardi Gras, and events at Circuit of Americas. (*Id.* ¶ 73.) Relator alleges that, as a result, in some markets, Defendant missed approximately 100 to 150 scheduled services per day, including services on government contracts. (*Id.* ¶ 75.) However, the bills presented to Defendant's clients, including the government, were not manually adjusted by the FOS office for these missing services. (*Id.* ¶ 92.) According to the CAC, manual adjustments to bills were time-consuming and, thus, routinely skipped. (*See id.* ¶¶ 90, 92, 96-97.) Moreover, Defendant's senior management discouraged the FOS office from making manual adjustments to customers' bills to account for missed services, unless the client complained and provided proof

of the missing service. (*Id.* ¶¶ 93-95, 97, 105.) Accordingly, since at least 2011, Defendant billed the government at least $30,000 per day for unperformed services. (*Id.* ¶¶ 7, 61-63, 100-01, 106.)

During her employment, Relator raised concerns regarding Defendant's failure to manually adjust bills for missed service calls. (*Id.* ¶¶ 103-04.) After each complaint, senior management directed Relator to disregard the discrepancies because she was not responsible for overseeing government contracts. (*Id.* ¶ 104.) Moreover, Defendant's senior management informed Relator that Defendant's "bottom line" would be negatively impacted should bills be manually adjusted to credit clients for missed service calls. (*Id.*)

**B. Prevailing Wage**

In some markets, Defendant subcontracted some of the services that were to be provided under its government contracts. (*Id.* ¶ 109.) Relator alleges, upon information and belief, that Defendant entered agreements with approximately 250 subcontractors nationwide, and that approximately ten of these subcontractors operated in the South Central Region. (*Id.* ¶¶ 110-12.) According to the CAC, Defendant did not implement or follow a bidding process when selecting subcontractors to perform services under government contracts. (*Id.* ¶ 116.) Moreover, Defendant did not maintain written contracts with its subcontractors, nor did it inform subcontractors of the terms regarding drivers' prevailing wages under the Schedule. (*Id.* ¶¶ 113, 118.) Relator alleges that, as a result, in some instances, Defendant's subcontractors paid drivers $4.00 to $5.00 less per hour than the prevailing wage for work performed under the Schedule. (*Id.* ¶¶ 114-15.) And, Defendant improperly "pocketed" the monetary difference between the wages paid to drivers by its subcontractors and the prevailing wages established under the Schedule. (*Id.* ¶ 117.) Relator complained to Defendant's senior management and leadership

teams about the issue of its subcontractor's failure to pay drivers the prevailing wage. (*Id.* ¶¶ 119, 121, 123, 125-26, 128-32.) In response to at least one complaint, Defendant instructed Relator to disregard the issues concerning the payment of the prevailing wage because Relator did not oversee government contracts. (*Id.* ¶ 122.) Defendant took no further action to address Relator's concerns. (*Id.* ¶ 127.)

**C. Specific Instances of Alleged Fraud**

Relator alleges, upon information and belief, that Defendant contracted to provide and service portable toilets at Camp Edwards, located in Massachusetts. (*Id.* ¶ 134.) According to the CAC, Defendant admitted that the billing for services completed at Camp Edward was "imprecise." (*Id.* ¶ 135.) Relator further alleges that there are thousands of route sheets associated with the Camp Edward contract, which, along with invoices, would indicate missed services, unauthorized services, and a failure to reduce the client's bill to reflect missed services. (*Id.* ¶¶ 136-37.) Additionally, Relator alleges that Defendant had other contracts with the State of Massachusetts, under which it billed the state for unperformed services. (*Id.* ¶¶ 138-39, 142.)

Next, Relator alleges improprieties for services billed by Defendant to the United States and individual states impacted by Hurricane Harvey, including Texas and Louisianna. (*Id.* ¶¶ 143-44.) Specifically, under certain of the contracts, Defendant was required to deliver and set up toilets and hand-washing units. (*Id.* ¶ 145.) Relator alleges, upon information and belief, that, from October to December 2017, Defendant billed for services that were not performed and continued to bill for these services even after the units had been retrieved. (*Id.* ¶¶ 148-49.) Moreover, according to the CAC, upon information and belief, Defendant overcharged the United States government and states for the use of its shower trailers. (*Id.* ¶¶ 150-52.) Relator further alleges, upon information and belief, that Defendant similarly overcharged for restrooms,

toilets, and hand-washing units provided under a separate contract with the Federal Emergency Management Agency. (*Id.* ¶¶ 153-54.)

## STANDARD OF REVIEW

### I. Rule 12(b)(6)

To withstand a Rule 12(b)(6) motion to dismiss, a counterclaim "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). A claim is facially plausible when the alleged facts allow the court to draw a "reasonable inference" of a defendant's liability for the alleged misconduct. *Id.* (quoting *Twombly*, 550 U.S. at 556). While this standard requires more than a "sheer possibility" of a defendant's liability, *id.*, "[i]t is not the Court's function to weigh the evidence that might be presented at trial" on a motion to dismiss, *Morris v. Northrop Grumman Corp.*, 37 F. Supp. 2d 556, 565 (E.D.N.Y. 1999). Instead, "the Court must merely determine whether the complaint itself is legally sufficient, and, in doing so, it is well settled that the Court must accept the factual allegations of the complaint [and counterclaim] as true." *Id.* (internal citations omitted).

Moreover, because "the FCA is an anti-fraud statute . . . claims brought under the FCA fall within the express scope of [Fed. R. Civ. P.] 9(b)." *Wood ex rel. U.S. v. Applied Rsch. Assocs., Inc.*, 328 Fed. App'x. 744, 747 (2d Cir. 2009) (internal quotations omitted) (citing *Gold v. Morrison–Knudsen Co.*, 68 F.3d 1475, 1476–77 (2d Cir. 1995)). To satisfy Rule 9(b), a complaint alleging fraud must '"(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."' *U.S. ex rel. Ladas v. Exelis, Inc.*, 824 F.3d 16, 25

(2d Cir. 2016) (quoting *Shields v. Citytrust Bancorp., Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994)). In other words, "Rule 9(b) requires that a plaintiff set forth the who, what, when, where and how of the alleged fraud." *U.S. ex rel. Polansky v. Pfizer, Inc.*, No. 04-CV-0704, 2009 WL 1456582, at *4 (E.D.N.Y. May 22, 2009) (citation omitted). "Ultimately, whether a complaint satisfies Rule 9(b) depends upon the nature of the case, the complexity or simplicity of the transaction or occurrence, the relationship of the parties and the determination of how much circumstantial detail is necessary to give notice to the adverse party and enable him to prepare a responsive pleading." *United States v. Cath. Health Sys. of Long Island Inc.*, No. 12-CV-4425, 2017 WL 1239589, at *6 (E.D.N.Y. Mar. 31, 2017) (internal quotations omitted) (citing *United States v. Wells Fargo Bank, N.A.*, 972 F.Supp.2d 593, 616 (S.D.N.Y. 2013)); *see also Rombach v. Chang*, 355 F.3d 164, 171 (2d Cir. 2004) (discussing the purpose of the particularity requirement and emphasizing fair notice to the defendant).

## DISCUSSION

### I. FCA

The FCA imposes liability for, *inter alia*, "knowingly" presenting or causing to be presented to the government, a false or fraudulent claim "for payment or approval"; "knowingly mak[ing], us[ing], or caus[ing] to be made or used, a false record or statement material to a false or fraudulent claim"; and "conspir[ing] to commit a violation of [31 U.S.C. § 3729(a)]." 31 U.S.C. § 3729(a)((1)(A)-(C). Although Congress has repeatedly amended the FCA, "its focus remains on those who present or directly induce the submission of false or fraudulent claims." *Universal Health Servs., Inc. v. U.S. ex rel. Escobar*, 579 U.S. 176, 182 (2016). Pursuant to the private, or qui tam, provision of the FCA, a private person may bring a civil action on behalf of the government, as a "relator," for violations of the Act. 31 U.S.C. § 3730(b)-(c).

**A. Sections 3729(a)(1)(A) and (B) Claims**

Defendant moves to dismiss Relator's FCA claims brought pursuant to §§ 3729(a)(1)(A) and (B). (Def.'s Mem. L. Supp. Mot. Dismiss ("Def.'s Mem.") at 2-3, ECF No. 48-1.) To prove a false claim under the FCA, §§ 3729(a)(1)(A) and (B), a relator must show that the defendant: "(1) made a claim, (2) to the United States government, (3) that is false or fraudulent, (4) knowing of its falsity, and (5) seeking payment from the federal treasury." *Mikes v. Straus*, 274 F.3d 687, 695 (2d Cir. 2001) (overruled on other grounds). A "claim" includes direct requests to the government for payment as well as claims for reimbursement under federal benefits programs. *Id.*

Moreover, a plaintiff asserting claims under the FCA must meet the requirements of Rule 9(b). *Applied Rsch. Assocs., Inc.*, 328 Fed. App'x. at 747. Rule 9(b) requires plaintiffs to set forth "the who, what, when, where and how of the alleged fraud." *Polansky*, 2009 WL 1456582 at *4 (citing *U.S. ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997)). Despite the generally rigid requirement of Rule 9(b), allegations of fraud may be based on "information and belief when facts are peculiarly within the opposing party's knowledge" and the relator "adduce[s] specific facts supporting a strong inference of fraud." *Wexner v. First Manhattan Co.*, 902 F.2d 169, 172 (2d Cir. 1990); *U.S. ex rel. Chorches for Bankr. Est. of Fabula v. Am. Med. Response, Inc.*, 865 F.3d 71, 81–82 (2d Cir. 2017). It is well settled that where a plaintiff' seeks a relaxation of the pleading standard under Rule 9(b), because it believes facts necessary to support its allegations are in the defendant's control, the plaintiff must "provide a statement of facts upon which the belief is founded." *Campaniello Imports, Ltd. v. Saporiti Italia S.p.A.*, 117 F.3d 655, 664 (2d Cir. 1997). That said, this exception should not be mistaken for "license to base claims of fraud on speculation and conclusory

allegations." *Wexner*, 902 F.2d at 172 (noting that failure to plead a strong inference of fraud "will not satisfy even a relaxed pleading standard"). Indeed, "the circumstances constituting fraud [must] be pleaded with particularity." *Chorches*, 865 F.3d at 86 (considering allegations based on information and belief where relator was able to provide specific details of how and when fraud occurred and how it was linked to billing).

Defendant argues that Relator's claims of nationwide fraud, brought pursuant to §§ 3729(a)(1)(A) and (B), must be dismissed because Relator fails to plead those claims with the particularity that Rule 9(b) requires. (Def.'s Mem. at 5-10.) The Court agrees.

Here, as an initial matter, Relator alleges, upon information and belief, that Defendant perpetrated a nationwide fraud. (*See* CAC at 11 n. 3 ("Relator believes that Defendant perpetuated its fraud nationwide . . . . ").) In effect, Relator concedes that she cannot identify the exact "who, what, when, where and how of the alleged fraud," as required under Rule 9(b). *Polansky*, 2009 WL 1456582 at *4 (citing *U.S. ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997)). However, as Defendant aptly argues, the CAC fails to set forth facts establishing why the information contained within any particular claim submitted to the government is "peculiarly within [Defendant's] knowledge." (Def.'s Mem. at 7-9.) *Wexner*, 902 F.2d at 172; *Chorches*, 865 F.3d at 81–82. While it is true that Relator did not approve government contracts on behalf of Defendant, (CAC ¶¶ 56-58), as a Regional Sales Managers, she worked closely and frequently on government contracts with members of Defendant's senior management team, to ensure that these contracts were serviced, (*Id.* ¶¶ 53-55, 59; *see also id.* at 11 n. 3). Indeed, as a part of servicing government contracts, Relator resolved complaints lodged by customers who were billed by Defendant for missed service calls. (*Id.* ¶ 62.) According to the CAC, Relator "learned" about Defendant's practice of submitting false

claims and overbilling the government, as well as the failure of Defendant's subcontractors to pay drivers the prevailing wage, in the course of performing these duties. (CAC ¶¶ 61-63, 108.) Plainly, Relator's position made it such that she had access to the information necessary to allege that a particular claim was submitted to the government and was false or fraudulent. To put it differently, Relator possessed the ability to identify specific fraudulent information that Defendant submitted to the government. Relator failed to do so. As such, Relator fails to plausibly allege that the claims submitted to the government were uniquely within Defendant's knowledge and control. Accordingly, the CAC fails to establish a basis for concluding that allegations regarding the actual submission of fraudulent bills may be properly made on information and belief. *See Wexner*, 902 F.2d at 172; *Chorches*, 865 F.3d at 81-82.

Even assuming the "relaxed pleading standard" applied, *Wexner*, 902 F.2d at 172, Relator fails to plead facts supporting a strong inference of fraud. That is, absent from the CAC are any facts connecting the alleged conduct to "*specific* claims [that] were indeed submitted" to the government." *See Chorches*, 865 F.3d at 93 (emphasis added). Here, according to the CAC, "starting in at least 2011," after Defendant entered an agreement with the GSA and further contracted with government agencies, Defendant submitted "false and fraudulent information" to the government, which cost the government "approximately $30,000 or more [per] day." (CAC ¶¶ 7, 38-39, 61.) Specifically, Relator alleges that Defendant frequently missed scheduled services—due to drivers being ill, recalled, or unable to find service locations—for which the government was automatically billed and not credited. (*Id.* ¶¶ 72, 81, 92.) Moreover, Relator alleges that Defendant entered non-written agreements with subcontractors nation-wide and that these subcontractors failed to pay drivers the prevailing wage required under the government contracts. (*Id.* ¶¶ 110-15.) However, Relator fails to allege a single, specific instance in which

Defendant submitted false and fraudulent information to the government. Indeed, Relator reserves much of her CAC for merely setting forth, in granular detail, Defendant's billing practices and procedures. In any event, the CAC relies on bare and speculative allegations that Defendant automatically billed the government, including for services that were allegedly missed or performed for less than the contracted prevailing wage. It is true that Relator also alleges that staff were discouraged from crediting the customer, (*id.* ¶¶ 92-98), and that drivers hired by its subcontractors were paid less than the prevailing wage, the difference of which Defendant "pocketed," (*id.* ¶¶ 115, 117). However, even taken as true, these allegations are no substitute for allegations of specific circumstances and events that would turn Defendants' "seemingly legitimate activities into a fraudulent scheme." *U.S. ex rel. NPT Assocs. v. Lab. Corp.*, 2022 WL 3718265, *4 (S.D.N.Y. Aug. 29, 2022) (citation omitted).

To be sure, under the relaxed pleading standard, a relator need not plead exact details for every fraudulent claim submitted. *See, e.g.*, *United States v. Wells Fargo Bank, N.A.*, 972 F. Supp. 2d 593, 616 (S.D.N.Y. 2013) (finding that the plaintiff, who alleged "two schemes involving thousands of false or fraudulent claims over a period of almost ten years," need not "plead the details of each and every false claim."). A relator may, instead, satisfy Rule 9(b) by pleading a scheme with particularity and alleging specific, representative examples of false claims submitted to the government pursuant to that scheme. *See, e.g.*, *Chorches*, 865 F.3d at 86-89 (concluding that Relator satisfied the requirements of Rule 9(b) by alleging, with particularity, the defendant's scheme and identifying particular examples in which the scheme was carried out); *Union Mutual Fire Insurance Company v. Stand Up MRI of Brooklyn, P.C.*, No. 24-CV-6652, 2025 WL 3165668, at *5 (E.D.N.Y. Nov. 12, 2025) (finding that the "[p]laintiff's eight specific examples of fraudulent claims plus its allegation that these claims are

representative of the fifty-one total" satisfied Rule 9(b)); *Wells Fargo Bank, N.A.*, 972 F. Supp. 2d at 616 (finding that a plaintiff could sufficiently satisfy Rule 9(b) by "plead[ing] each scheme 'with particularity, and provid[ing] [ ] examples of specific false claims submitted to the government pursuant to that scheme.'" (third alteration in original) (citations omitted)).

Defendant argues that Relator's representative examples of fraud all fail to meet the standard set forth under Rule 9(b). (Def.'s Mem. at 9-10.) The Court, too, agrees. Here, Relator purportedly provides "specific instances of fraud" in connection with Defendant's agreements with Camp Edwards Massachusetts, (CAC ¶¶ 134-37); the State of Massachusetts, (*id.* ¶¶ 138-42); and the federal government—that is, the Federal Emergency Management Agency ("FEMA")—and the states impacted by Hurricane Harvey (*id.* ¶¶ 143-54), respectively. For each of these examples, Relator alleges only that Defendant entered a contract for the provision of services for which each customer was billed; that, upon information and belief, review of route sheets and invoices will demonstrate missed or unperformed services under each contract; and that, upon information and belief, Defendant failed to credit each customer for missed or unperformed services and overcharged the customer. (*Id.* ¶¶ 134-54.) Critically, however, Relator fails to provide sufficient information regarding the false or fraudulent claims submitted to the government. For example, Relator fails to provide the dates of the missed or unperformed services, the dates on which Defendant submitted false or fraudulent claims, and, in some instances, the federal or state entities to which these claims were submitted. Even more, the majority of Relator's allegations as to these specific instances of fraud are, again, made upon information and belief. Plainly, the information contained in Relator's representative examples falls well short of that which this circuit has previously found sufficient to satisfy Rule 9(b). *See, e.g.*, *Chorches*, 865 F.3d at 84-86 (finding that Relator satisfied the pleading requirements of

Rule 9(b) by alleging examples of specific ambulance transports, containing "information such as the date, patient name, and original reason for the transport," for which the relator was instructed to alter the patient care record with false or misleading information). Relator's allegations of specific instances of fraud are, thus, insufficient to satisfy the pleading standard under Rule 9(b). Relator's non-intervening federal claims of nationwide fraud are dismissed, accordingly.

**B. Section 3729(a)(1)(C)**

Defendant also moves to dismiss Relator's claims brought pursuant to § 3729(a)(1)C). (Def.'s Mem. at 2-3.) To state a claim under § 3729(a)(1)C), a relator must plead sufficient facts showing that: (1) the defendant conspired with at least two persons for the purpose of getting a false or fraudulent claim allowed or paid by the United States and (2) at least one of the conspirators performed an act "to effect the object of the conspiracy." *United States ex rel. Piacentile v. Amgen, Inc.*, 336 F. Supp. 3d 119, 136 (E.D.N.Y. 2018) (internal quotation marks omitted) (citing *United States ex rel. Wood v. Allergan, Inc.*, 246 F. Supp. 3d 772 (S.D.N.Y. 2017), *rev'd and remanded on other grounds*, 899 F.3d 163 (2d Cir. 2018). That is, "there must be an agreement to defraud the government between two or more persons coupled with any act to get a false or fraudulent claim allowed or paid." *United States ex rel. Taylor v. Gabelli*, 345 F. Supp. 2d 313, 331 (S.D.N.Y. 2004) (internal quotations omitted).

Defendant argues that the CAC fails to include any allegation in support of Relator's conspiracy claim. (Def.'s Mem. at 18-19.) Notably, Relator fails to respond to this argument. For this reason, the claim is deemed abandoned. *See Nunez v. Cuomo*, No. 11-CV-3457, 2012 WL 3241260, at *19 (E.D.N.Y. Aug. 7, 2012) ("Plaintiffs appear to concede Defendants' arguments, as they fail to acknowledge or contest them"); *Dolce v. Connetquot Cent. Sch. Dist.*,

No. 24-CV-00622, 2025 WL 1070079, at *7 (E.D.N.Y. Apr. 9, 2025) (holding that, by "failing to respond to [an] argument" in opposition to defendants' motion to dismiss, plaintiffs "abandoned" their claim); *BYD Co. Ltd. v. VICE Media LLC*, 531 F. Supp. 3d 810, 821 (S.D.N.Y. 2021) ("Plaintiffs' failure to oppose [d]efendants' specific argument in a motion to dismiss is deemed waiver of that issue" (citation omitted)), *aff'd*, No. 21-1097, 2022 WL 598973 (2d Cir. Mar. 1, 2022). In any event, the Court agrees with Defendant.

Here, the CAC fails to include a single allegation as to the existence of a conspiracy. That is, Relator fails to identify any conspirators, agreement, or act taken in furtherance of a conspiracy. Indeed, outside of the section setting forth the fourth cause of action, (CAC ¶¶ 171-173), the CAC does not include the word "conspiracy" or any iteration thereof. Nor does the CAC make mention of any agreements, outside of those contractual agreements entered with the government and subcontractors, for the provision of services. Plainly, Relator fails to plead facts sufficient to state a § 3729(a)(1)C) claim for conspiracy. Relator's conspiracy claim, brought pursuant to § 3729(a)(1)C), is dismissed, accordingly.[5]

### C. Relator's Non-Intervening State Claims

[5] The Court recognizes that, unlike claims brought pursuant to §§ 3729(a)(1)(A) and (B), there is some disagreement among the circuits as to whether Rule 9(b) applies to conspiracy claims made under § 3729(a)(1)(C). *Amgen, Inc.,* 336 F. Supp. 3d at 136. For example, the First, Sixth, Eight, and Eleventh Circuits have held that Rule 9(b) does apply in these circumstances. *Amgen, Inc.,* 336 F. Supp. 3d at 136 (first citing *United States ex rel. Gagne v. City of Worcester*, 565 F.3d 40, 45 (1st Cir. 2009); then *United States ex rel. Marlar v. BWXT Y–12, L.L.C.*, 525 F.3d 439, 445 (6th Cir. 2008); then *United States ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 556 (8th Cir. 2006); and then *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1014 (11th Cir. 2005) (per curiam)). On the other hand, the "'Second Circuit has not decided whether (and, if so, how) Rule 9(b) applies to subsection (a)(1)(C), and district courts in this Circuit seem to have diverged on the question.'" *Id.* (quoting *United States ex rel. Wood v. Allergan, Inc.*, 246 F.Supp.3d 772, 825 (S.D.N.Y. 2017), *rev'd on other grounds*, 899 F.3d 163 (2018)). Neither party raises this issue in their motion papers. Nevertheless, the allegations of conspiracy in the CAC do not even satisfy the Rule 8 standard, which generally only requires a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), as opposed to the "more stringent heightened" Rule 9 standard, *Acticon AG v. China N. E. Petroleum Holdings Ltd.*, 692 F.3d 34, 37 (2d Cir. 2012), which requires a party "state with particularity the circumstances constituting fraud or mistake," Fed. R. Civ. P. 9(b).

Relator's State FCA Law claims fare no better. Defendants argue that Relator's state law claims should be dismissed because they are not pleaded with the particularity that Rule 9(b) requires. (Def.'s Mem. at 20.) The Court agrees. Indeed, the Rule 9(b) pleading standard applies with equal force to state law claims. *United States v. Lab'y Corp. of Am. Holdings*, No. 07-CV-5696, 2015 WL 7292774, at *6 (S.D.N.Y. Nov. 17, 2015). Accordingly, courts have required that relators "allege some specificity with respect to each asserted state and cannot rely upon generalized pleadings." *Fresenius Med. Care Holdings*, No. 14-CV-03505, 2024 WL 4635236, at *7 (E.D.N.Y. Oct. 31, 2024) (quoting *Lab'y Corp. of Am. Holdings*, No. 07-CV-5696, 2015 WL 7292774, at *6) (first citing *U.S. ex rel. Saldivar v. Fresenius Med. Care Holdings, Inc.*, 906 F. Supp. 2d 1264, 1277 (N.D. Ga. 2012); and then *U.S. ex rel. Wall v. Vista Hospice Care, Inc.*, 778 F. Supp. 2d 709, 723 (N.D. Tex. 2011)). Here, Relator's CAC is completely devoid of allegations of fraudulent conduct in any of the four non-intervening states. Indeed, the only allegation made as to majority of the named states—California, Florida, and New York—is that Defendant provided services therein. (CAC ¶¶ 5-6, 42-49.) And. as discussed, *supra*, Relator does not allege much more with respect to Massachusetts. The Court has already determined that Relator cannot rely on conclusory allegations of nationwide fraud to support a claim that illicit conduct was carried out in particular states. Accordingly, Relators' non-intervening state law claims are dismissed.

**CONCLUSION**

For the foregoing reasons, Defendant's motion to dismiss is GRANTED.

SO ORDERED.

Dated: Brooklyn, New York
October 19, 2026

/s/ LDH
LASHANN DEARCY HALL
United States District Judge